**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

| | |
|---|---|
| RIP TIDE INVESTORS, INC. | CIVIL ACTION NO. 15-1656 |
| VERSUS | UNASSIGNED DISTRICT JUDGE |
| W & T OFFSHORE, INC., ET AL. | MAGISTRATE JUDGE WHITEHURST |

**MEMORANDUM RULING**

Before the Court in this litigation involving a lease dispute are cross-motions for summary judgment filed by Defendant W&T Offshore, Inc. ("W&T") and Plaintiff Rip Tide Investors, Inc. ("Rip Tide"). W&T seeks a judgment of dismissal with prejudice of all claims asserted against it by Rip Tide (Record Document 14), on the basis that the lease was not renewed and all obligations owed by W&T were extinguished by performance prior to expiration of the initial lease period. Rip Tide seeks judgment in its favor, holding W&T liable for payment of the balance of rentals due under the lease, which Rip Tide contends was extended by virtue of W&T's assignee, Black Elk Energy Offshore Operations, LLC's ("Black Elk"), exercise of an option to renew (Record Document 16). Because the Court finds there is no genuine issue of material fact and W&T is entitled to judgment as a matter of law, W&T's Motion (Record Document 14) is hereby **GRANTED**, and Rip Tide's Motion (Record Document 16) is hereby **DENIED**.

**FACTUAL AND PROCEDURAL BACKGROUND**

The following facts are not in dispute. Rip Tide is the primary surface lessee of approximately 350 acres of land in Vermilion Parish, Louisiana, leased to it by Vermilion Corporation and Humble Oil & Refining Company (now ExxonMobil). Record Document

1-1 at ¶ 3; Record Document 16-2 at 6. Effective December 1, 2008, Rip Tide (as Sublessor) entered into a surface sublease ("the Sublease") with W&T (as Sublessee) of two tracts of land situated within that 350 acres. Record Document 1-1 at ¶ 4; Record Document 16-1 at ¶ 1. The primary term of the Sublease between Rip Tide and W&T was from December 1, 2008 through November 30, 2013, at a monthly rental rate of $7,500.00. Record Document 14-1 at ¶ 3; Record Document 16-2 at 6. The Sublease contained an option to extend the primary term of the lease for an additional three and a half years, which reads as follows:

> SUBLESSEE is granted the option to renew this lease for one (1) additional period ending May 31, 2017 under the same terms, conditions and rentals due under the primary term of this lease, except as modified in paragraph 2.[1] In the event SUBLESSEE desires to exercise the option herein granted, it shall do so by giving written notice to SUBLESSOR by Certified Mail or Registered mail at least ninety (90) days before the expiration of the lease.

Record Document 14-5 at ¶ 3. Thus, in order to timely exercise the option to renew the Sublease, Rip Tide had to receive written notice by certified or registered mail on or before September 2, 2013. Record Document 14-1 at ¶ 5; Record Document 16-2 at 7.

On October 29, 2009, W&T assigned the Sublease to Black Elk by Conveyance and Bill of Sale. Record Document 14-1 at ¶ 1; Record Document 16-3 at 19. All interested parties consented to the assignment. Record Document 16-1 at ¶ 3; Record Document 19-1 at 1. On September 19, 2013, seventeen (17) days after the September 2 deadline for renewal, Jeff Hemingway, a Senior Landman for Black Elk, mailed a letter to Rip Tide

---

[1] Paragraph 2 of the Sublease provides that every five years the monthly rental cost would be adjusted based on a formula utilizing the Consumer Price Index, but "in no event shall the rental be less than the original base rental." Record Document 14-5 at ¶2.

via regular U.S. Mail, which stated in pertinent part, "By copy of this letter, Black Elk Energy Offshore Operations, LLC (as successor in interest to W&T Offshore, Inc.) hereby requests to renew that certain Surface Sublease dated effective December 1, 2008 for an additional term until May 31, 2017, as provided in paragraph 3 of the agreement." Record Document 16-4 at 18; Record Document 14-1 at ¶ 6. On November 12, 2013, Dexter Duhon, Secretary/Treasurer of Rip Tide, responded to Mr. Hemingway by e-mail as follows: "With regard to the renewal of your lease with Riptide Investors Inc., the new monthly lease payment, beginning on December 1, 2013, will be $7975.45. This renewal period will end on May 31, 2017." Record Document 16-4 at 19. Rip Tide had no further communications with Black Elk about the option to renew. Record Document 16-4 at ¶¶ 15, 17; Record Document 14-1 at ¶ 8. Neither Rip Tide nor Black Elk contacted W&T to obtain its consent to Black Elk's untimely attempt to exercise the option to renew the Sublease. Record Document 14-1 at ¶ 9; Record Document 16-1 at ¶ 5.

All payments due under the Sublease were paid by Black Elk through November 30, 2013. Record Document 14-1 at ¶ 10; Record Document 16-1 at ¶ 12. Thus, all amounts owed for rent under the original Sublease term were paid. After expiration of the original Sublease term, Black Elk paid the increased monthly rental rate of $7,975.45 for the months of December 2013 through November 2014. Record Document 14-1 at ¶ 11; Record Document 16-1 at ¶ 13. No further rental payments were made by Black Elk after the November 2014 payment. Record Document 14-1 at ¶ 13; Record Document 16-1 at ¶ 15. Although it continued to pay the rent, Black Elk did not occupy the leased premises

at any time after the expiration of the primary term of the Sublease on November 30, 2013. Record Document 14-1 at ¶ 12; Record Document 16-1 at ¶ 14.

Rip Tide initiated this suit against W&T and Black Elk in state court on March 24, 2015, seeking "judgment in favor of Rip Tide and against W&T and Black Elk, jointly, severally and *in solido*, for all rentals due under the terms of the lease, together with legal interest thereon from the date of judicial demand, all costs associated with the prosecution of this suit, and all just and equitable relief." Record Document 1-1 at 5. On May 7, 2015, Defendants removed this matter to this Court, based upon 28 U.S.C. § 1332, diversity of citizenship. Record Document 1. On August 11, 2015, an Involuntary Petition for Bankruptcy was filed against Black Elk in the United States Bankruptcy Court for the Southern District of Texas. Record Document 10. Accordingly, Rip Tide's claim against Black Elk is stayed pursuant to 11 U.S.C. § 362(a), pending notice from the presiding bankruptcy court that the stay has been lifted. Record Document 11. In accordance with a previous Order of the Court, Rip Tide and W&T conferred and agreed there is no need to stay the litigation of Rip Tide's claim against W&T. Record Document 11; Record Document 13.

W&T now seeks judgment in its favor, dismissing all claims asserted against W&T by Rip Tide with prejudice. Record Document 14 at 1. W&T contends Black Elk's attempted exercise of the option to renew was untimely; therefore, the Sublease expired at the end of the primary term on November 30, 2013. Record Document 14-2 at 15-16. According to W&T, because all obligations under the primary Sublease were extinguished

by performance, W&T owes no further contractual obligations to Rip Tide. Record Document 14-2 at 11, 16.

Contrarily, Rip Tide seeks judgment in its favor "holding W&T liable for payment of the balance of rentals due under the Surface Sublease." Record Document 16 at 2. Rip Tide acknowledges Black Elk's purported exercise of the option to renew was untimely. Record Document 16-1 at ¶¶ 6-8. Nevertheless, Rip Tide contends it waived Black Elk's untimely exercise of the option, and therefore W&T, as assignor, remains solidarily liable with Black Elk for the unpaid rentals from December 2015 through May 2017. Record Document 16-2 at 9.

**LAW AND ANALYSIS**

**I.     Summary Judgment Standard**

"A party may move for summary judgment, identifying each claim or defense - or the part of each claim or defense - on which summary judgment is sought." Fed. R. Civ. P. 56(a). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Id. A fact is material if proof of its existence or nonexistence might affect the outcome of the lawsuit under the applicable governing law. Sossamon v. Lone Star State of Texas, 560 F.3d 316, 326 (5th Cir. 2009). As summarized by the Fifth Circuit:

> When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. However, where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial. Only when "there is sufficient evidence favoring the nonmoving party for a jury to return a

verdict for that party" is a full trial on the merits warranted. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2510 (1986). Lindsey v. Sears Roebuck and Co., 16 F.3d 616, 618 (5th Cir.1994) (internal citations omitted).

In evaluating evidence to determine whether a factual dispute exists, "credibility determinations are not part of the summary judgment analysis." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir.1994). To the contrary, "[i]n reviewing all the evidence, the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party as well as that evidence supporting the moving party that is uncontradicted and unimpeached." Roberts v. Cardinal Servs., 266 F.3d 368, 373 (5th Cir. 2001).

**II.　Applicable Law**

"Lease is a synallagmatic contract by which one party, the lessor, binds himself to give to the other party, the lessee, the use and enjoyment of a thing for a term in exchange for a rent that the lessee binds himself to pay." La. Civ. Code art. 2668. The term of a lease may be agreed to by the parties or fixed by law. La. Civ. Code art. 2678. In interpreting a lease made pursuant to Louisiana law, courts are to "begin from the well-settled premise that '[c]ontracts have the effect of law for the parties' and the '[i]nterpretation of a contract is the determination of the common intent of the parties.'" Lobell v. Rosenberg, 2015-0247 (La. 10/14/15), 186 So.3d 83, 88 (alterations in original) (quoting Clovelly Oil Co., LLC v. Midstates Petroleum Co., LLC, 2012-2055 (La. 3/19/13), 112 So.3d 187, 192); see also Tenet Health Sys. Surgical, L.L.C. v. Jefferson Parish Hosp. Serv. Dist. No. 1, 426 F.3d 738, 741 (5th Cir. 2005).

"When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties intent." La. Civ. Code art. 2046. "Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." La. Civ. Code art. 2050. "When a clause in a contract is clear and unambiguous, the letter of that clause should not be disregarded under the pretext of pursuing its spirit, as it is not the duty of the courts to bend the meaning of the words of a contract into harmony with a supposed reasonable intention of the parties." Lobell, 186 So.3d at 89.

"An option is a contract whereby the parties agree that the offeror is bound by his offer for a specified period of time." La. Civ. Code art. 1933; see also La. Civ. Code art. 2669. "If the lease contract contains an option to extend the term and the option is exercised, the lease continues for the term and under the other provisions stipulated in the option." La. Civ. Code art. 2725. The foregoing codal article addresses what is popularly known as the "option to renew." Id. at comment (b). The option or right to renew a lease is never presumed. Governor Claiborne Apartments, Inc. v. Attaldo, 50016 (La. 5/4/70), 235 So.2d 574, 576; Knatt v. Hosp. Serv. Dist. No. 1 of East Baton Rouge Parish, 289 F. App'x 22, 28 (5th Cir. 2008).

Where a lessee provides written notice of his intention to renew, but that notice is untimely, renewal of the lease under an option to renew is not valid, and the lease terminates at the expiration of the initial lease period. Southern Ventures Corp. v. Texaco, Inc., 63945 (La. 6/25/79), 372 So.2d 1228, 1230; Sizeler Hammond Square Ltd. P'ship v. Gulf States, 02-759 (La. App. 5 Cir. 12/11/02), 836 So.2d 256, 260-61; Knatt, 289 F. App'x

at 28; La. Civ. Code art. 1773 (If the condition upon which an obligation depends is that an event shall occur within a fixed time and that time elapses without the occurrence of the event, the condition is considered to have failed). In such a circumstance, neither continued possession by the lessee nor acceptance of rent by the lessor will be deemed tacit acknowledgment of the right to renew, nor will it be deemed as a waiver of any of the terms set forth in the option. Southern Ventures, 372 So.2d at 1230; Sizeler, 836 So.2d at 261-62; Knatt, 289 F. App'x at 28-30.

### III. Analysis

As previously set forth, W&T contends summary judgment in its favor is warranted because Black Elk's attempted exercise of the option to renew was not timely, and therefore the Sublease expired on November 20, 2013, i.e., the end of the primary term of the Sublease. According to W&T, because all obligations under the original Sublease were extinguished by performance, W&T owed no further contractual obligations to Rip Tide. Record Document 14-2 at 11. Rip Tide contends summary judgment in its favor is warranted because Black Elk's untimely exercise of the option was waived by Rip Tide, and therefore W&T, as assignor, remains solidarily liable with Black Elk for the unpaid rentals from December 2015 through May 2017. Record Document 16 at 1-2.

Before examining the issue before the Court, i.e., whether Black Elk's untimely exercise of the option to renew is binding upon W&T, the Court briefly notes what is not at issue between the parties. First, the parties (and the Court) agree the Sublease was not reconducted, because the undisputed evidence is that Black Elk did not occupy the premises at any time after the primary term of the Sublease expired. Record Document

14-2 at 18-19; Record Document 18-1 at 5. See La. Civ. Code art. 2721 ("A lease with a fixed term is reconducted if, after the expiration of the term, and without notice to vacate or terminate or other opposition by the lessor or the lessee, the lessee remains in possession . . . [f]or one week . . . ."). Second, the parties (and the Court) agree no novation took place. "Novation is the extinguishment of an existing obligation by the substitution of a new one." La. Civ. Code art. 1879. According to W&T, "all obligations of the parties under the original Surface Sublease were performed, and thus there was no obligation to be extinguished." Record Document 19 at 11. According to Rip Tide, because there was no extinction of the original obligation nor substitution of a new obligation, no novation occurred. Record Document 16-2 at 15. The Court additionally notes a delegation of performance by an obligor to a third person "effects a novation only when the obligee expressly discharges the original obligor." La. Civ. Code art. 1886; see also Cane River Shopping Center v. Monsour, 83-23 (La. App. 3 Cir. 5/25/83), 443 So.2d 602, 604 (Lessor's consent to assignment of lessee's lease and new lessee's assumption of payments under lease was merely acceptance of new debtor and not an express declaration to discharge old debtor, and therefore the assignment was not a novation). In this matter, the obligee, Rip Tide, did not expressly discharge the original obligor, W&T. Therefore, there was no novation.

The Court now turns to the issue at hand, namely, whether Black Elk's untimely exercise of the option to renew is binding upon W&T. To properly exercise the option to renew the Sublease, Black Elk was required to give written notice to Rip Tide by certified or registered mail on or before September 2, 2013. Black Elk did not provide such notice

until September 19, 2013, more than two weeks after the option expired. Where a lessee provides untimely notice of his intention to renew, there is no valid renewal and the lease agreement comes to an end. Southern Ventures Corp. v. Texaco, Inc., 63945 (La. 6/25/79), 372 So.2d 1228, 1230; Hidalgo Motors, Inc. v. Opelousas Courtesy Motors, Inc., 89-903 (La. App. 3 Cir. 3/13/91), 576 So.2d 1086, 1087-88; Knatt v. Hosp. Serv. Dist. No. 1 of East Baton Rouge Parish, 289 F. App'x 22, 29 (5th Cir. 2008). Because Black Elk's attempt to exercise the option was untimely, there was no valid renewal of the Sublease. Therefore, the Sublease expired at the end of its primary term on November 30, 2013. Metairie PJ's, Inc. v. Richards Clearview, L.L.C., 07-188 (La. App. 5 Cir. 8/28/07), 963 So.2d 548, 549; Knatt, 289 F. App'x at 29.

Rip Tide admits Black Elk's exercise of the option to renew was untimely but maintains the Court should find Rip Tide waived Black Elk's untimeliness, thereby resulting in a valid renewal of the Sublease. In support of this contention, Rip Tide argues "Black Elk's letter stating its intention to exercise the option was unequivocal in that it intended to bind itself to the option terms contained in the Surface Sublease." Record Document 18-1 at 4. Rip Tide notes, "Prior to the lapse of the primary term, Dexter Duhon, Secretary/Treasurer of Rip Tide, sent an email to the duly authorized representative of Black Elk recognizing that, by virtue of its letter, Black Elk would be bound to the lease through May 31, 2017." Id. Rip Tide points out that Black Elk began paying the increased rental rate as required by the option agreement. Id. Rip Tide further notes that W&T was aware at the time it assigned the Sublease to Black Elk that Black Elk might exercise the option to renew. Id. at 5. Thus, Rip Tide concludes, "Black Elk's untimely exercise of the

option, and the waiver by both Black Elk and Rip Tide of that untimely exercise, did not prejudice W&T by imposing on it, as solidary obligor of Black Elk, an obligation of which it was unaware." Id.[2]

---

[2] The cases cited by Rip Tide in support of its argument are of little assistance in deciding the issue before this Court. Rip Tide cites Meaghan Frances Hardcastle Trust v. Fleur De Paris, Ltd., 2004-1371 (La. App. 4 Cir. 6/29/05), 917 So.2d 448, contending that case recognizes "[t]he parties' ability to waive the untimely exercise of a lease extension. . . ." Record Document 18-1 at 6. However, Meaghan Frances had nothing to do with the waiver of an untimely lease extension. Rather, Meaghan Frances dealt with ratification of a lease renewal clause that was relatively null, because it was not signed by all parties to the original lease. Both the original lease and renewal lease were filed in the conveyance records. Thereafter, the property was sold to the Meaghan Frances Hardcastle Trust ("the Trust"). After accepting rent payments for approximately one year, the Trust brought a Rule for Eviction against the tenants, arguing in part that the renewal lease was invalid as it was not signed by all parties to the original lease. Id. at 450. Affirming the trial court, the appellate court found the renewal lease was relatively null, but was confirmed by the acceptance of the rental payments. The appellate court additionally found the Trust was aware the lease had been renewed at the time it purchased the lease, because the renewal was filed in the conveyance records. To the extent Rip Tide is arguing its acceptance of increased rental payments after expiration of the primary Sublease constituted ratification, Rip Tide's "reliance on the doctrine of ratification is misplaced." Knatt, 289 F. App'x at 30. In this matter, as in Knatt, neither the primary lease nor the purported renewal were relatively null. Rather, the lease and the option to renew expired on their own terms because the option was not timely exercised. Id. Rip Tide additionally cites Gennaro v. Royal Oldsmobile Co., Inc., 09-1062 (La. App. 5 Cir. 5/25/10), 37 So.3d 1109 (addressing whether an automatic renewal clause of a lease was activated by the conduct of a sublessee) in support of its position that "[b]y couching its transfer of the lease to Black Elk as an assignment and not a sublease, W&T had notice that it was delegating to Black Elk the power to exercise the option to renew the Surface Sublease." Record Document 18-1 at 9. The Court agrees with the foregoing statement of Rip Tide; while W&T did indeed have notice "it was delegating to Black Elk the power to exercise the option to renew," W&T did not have notice that Black Elk could exercise the option to renew on terms different than those set forth in the primary lease. The Court additionally notes Gennaro dealt with a sublease, which has different legal ramifications than an assignment.

The deficiency in Rip Tide's argument is that it neglects the fact that there are two obligors under the Sublease - Black Elk and W&T. See La. Civ. Code art. 1789; La. Civ. Code art. 1794; La. Civ. Code art. 1815. W&T did not consent to any modification or waiver of the terms set forth in the option to renew, and therefore W&T cannot be bound to any purported waivers or modifications in which it did not participate. It is manifest that "no action for breach of contract may lie in the absence of privity of contract between the parties." Pearl River Basin Land & Dev. Co., L.L.C. v. State ex rel. Governor's Office of Homeland Sec. & Emergency Preparedness, 2009-0084 (La. App. 1 Cir. 10/27/09), 29 So.3d 589, 592. As held by the Louisiana Supreme Court, "The subsequent acceptance of the rental payments should not be construed as implying an agreement to extend the time for the exercise of the option in some other way which would be at variance with [the parties'] agreement." Southern Ventures, 372 So.2d at 1230. Because Black Elk's notice of its intention to exercise the option was untimely, and because W&T did not agree to waive Black Elk's untimely exercise of the option, the Court finds the option expired on September 2, 2013 as set forth in the Sublease. Black Elk's September 19, 2013 letter constituted an *offer* to enter into a new sublease on the same terms set forth in the original Sublease between Rip Tide and W&T. Sizeler Hammond Square Ltd. Partnership v. Gulf States, 02-759 (La. App. 5 Cir. 12/11/02), 836 So.2d 256, 261; Constantin Land Trust v. Pitre Industries, L.L.C.,2016-0993 (La. App. 1 Cir. 10/10/17), 225 So.3d 1089, 1097; Governor Claiborne Apartments, Inc. v. Attaldo, 50016 (La. 5/4/70), 235 So.2d 574, 576,

n.2. As W&T was not a party to Black Elk's offer to enter into a new contract of lease, it cannot be bound by any subsequent agreement between Rip Tide and Black Elk.

The Court finds the case cited by W&T, Davis v. Avenue Plaza, LLC, 2000-0226 (La. App. 4 Cir. 12/27/00), 778 So.2d 613, to be instructive. In Davis, a lessee of a time-share unit alleged he and the original lessor had orally modified the terms of the written contract of lease, and for a period of ten years thereafter, the original lessor honored the oral modification. The property was later sold, and the new owner was assigned the time-share lease. When the assignee/lessor advised the lessee it would enforce the contract of lease pursuant to its written terms only, the lessee brought suit for breach of lease. The lessee relied upon Pelican Electrical Contractors v. Neumeyer, 12783 (La. App. 4 Cir. 6/8/82), 419 So.2d 1, for the proposition that a written contract could be modified orally, even if the contract requires that modifications be in writing. However, the appellate court found Pelican Electrical was distinguishable, because in that case "the subsequent oral modification was enforced against the original party to the contract." Davis, 778 So.2d at 614-15 ("That is, the same party who entered into the oral modification was bound by it"). Unlike Pelican Electrical, in the Davis case, "the claimed oral modification was entered into between Mr. Davis [the lessee] and APAC [the original lessor] but Mr. Davis seeks to enforce it against Avenue Plaza [the assignee/lessor]." Id. at 615. The appellate court "decline[d] to extend Pelican Electrical to allow enforcement of a subsequent oral modification, despite the presence of a no oral modification clause, against an assignee who did not participate in the oral modification," reasoning in part as follows:

> Assignments of leases and other contracts, done either individually or, as in the present case, as part of a larger transaction, are common and

commercially important. Were we to hold that an assignee of a written lease or other written contract, which lease or other contract contains a no oral modification clause, could be bound by an oral modification in which it did not participate, then we would make the taking of assignments of leases and contracts (which might be dearly paid for) a hazardous practice and one subject to frequent injustice. An assignee of a written lease or other written contract which contains a no oral modification clause ought to be able to rely upon that clause.

Id.

While not completely on point factually, the reasoning of the Davis court is persuasive: W&T, the assignor, should not be bound by a modification to the Sublease in which it neither participated nor consented. W&T was entitled to rely upon the renewal clause of the Sublease and to insist upon strict compliance with its terms. When the Sublease was not timely renewed in accordance with its express provisions, the Sublease expired at the end of its primary term in accordance with Louisiana law. Black Elk paid rent through the expiration of the primary term, and therefore W&T's obligations under the Sublease were discharged at that time. Whatever agreement may have arisen between Black Elk and Rip Tide subsequent to the expiration of the option to renew is not binding upon W&T, as W&T was not a party to that agreement.[3] Rip Tide's remedy in this matter, if any, lies solely against Black Elk.

---

[3] W&T additionally contends because Black Elk's attempt to exercise the option to renew was tendered to Rip Tide via regular U.S. mail (rather than by certified or registered mail as required by the Sublease), Black Elk failed to comply with one of the conditions required for a valid exercise of the option. Record Document 14-2 at 16. As this argument was inadequately briefed, and because the Court finds Black Elk's attempt to exercise the option was untimely, it will not address this argument except to note, "When, in the absence of a legal requirement, the parties have contemplated a certain form, it is presumed that they do not intend to be bound until the contract is executed in that form." La. Civ. Code art. 1947; see also Casey v. National Information Services, Inc., 2004-0207

## CONCLUSION

From the summary judgment evidence, it is clear that there is no genuine dispute as to any material fact and W&T is entitled to summary judgment as a matter of law. W&T has shown it did not breach the Sublease at issue, it has shown any obligations it owed under the Sublease were extinguished by performance, and it has shown it was not privy to any subsequent agreement entered into by Rip Tide and Black Elk following expiration of the option to renew the Sublease. Accordingly, the Court finds all claims asserted by Rip Tide against W&T in this matter must be dismissed.

In light of the findings of the Court, W&T Offshore, Inc.'s Motion for Summary Judgment (Record Document 14) is **GRANTED**, and Rip Tide Investors, Inc.'s Motion for Summary Judgment (Record Document 16) is **DENIED**.

An order consistent with the findings of this Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 13th day of November, 2017.

_____
S. MAURICE HICKS, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

(La. App. 1 Cir. 6/10/05), 906 So.2d 710 (landowner's option to purchase property from mortgagee's assignee was not exercised where landowner's attempt to exercise the option was untimely and was not tendered via registered mail as required by the terms of the option); Salmen Co., L.L.C. v. Weyerhaeuser Co., 2007-0556 (La. App. 1 Cir. 12/21/07), 2007 WL 4465609, *4.